**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Curtis Harris,<br><br>        Plaintiff,<br><br>v.<br><br>My Credit Guy LLC,<br><br>        Defendant. | No. CV-25-00328-PHX-SMB<br><br>**ORDER** |

Before the Court is Defendant My Credit Guy LLC's Motion to Dismiss (Doc. 63) Plaintiff Curtis Harris' Amended Class Action Complaint (Doc. 28). Plaintiff filed a Response (Doc. 67), and Defendant filed a Reply (Doc. 68). The Court held oral argument on the Motion on May 5, 2025. For the reasons discussed herein, the Court will **grant in part** Defendant's Motion.

**I.   BACKGROUND**

    **A. Factual Background**

Plaintiff asserts eight causes of action in his Amended Complaint, and Defendant moves to dismiss Count I—violation of the Credit Repair Organizations Act ("CROA")—and Count II—violation of the Minnesota Credit Services Organizations Act ("MNCSOA"). (*See* Doc. 63.)

In this case, Plaintiff enlisted Defendant to repair his credit. (Doc. 28 ¶¶ 17–18.) Defendant promised that he would repair Plaintiff's credit at a fixed price, and that Plaintiff's obligation to pay for the repairs would arise after "the completion of the Initial

Services." (*Id.* ¶¶ 18–19, 23.) On August 31, 2023, Plaintiff and Defendant executed an Initial Services Agreement (the "Contract"), a Payment Authorization Form, and a Credit Monitoring Agreement (collectively, the "parties' Agreements"). (*Id.* ¶¶ 18–21.)

The Contract reiterated Defendant's promise to complete its services at a fixed price, which remained payable only after such services were rendered. (*See id.* ¶¶ 18–19, 23.) Although, as Plaintiff soon learned, Defendant charged and attempted to charge Plaintiff approximately ten times. (*Id.* ¶¶ 26, 35.) First, on October 2, 2023, Defendant charged Plaintiff $19.99 to retrieve his credit report and $325.00 for the associated credit services. (*Id.* ¶ 24.) At this time, Defendant had not performed the credit repair services, nor did the Contract require payment or authorize charges apart from the one-time fixed price. (*Id.*)[1] Then, on October 31 and November 1, 2023, Defendant attempted to charge Plaintiff for a "recurring" $100-per-month fee to continue the credit repair service. (*Id.* ¶ 27.)

On October 30, 2023, Plaintiff asked Defendant for copies of the credit dispute letter that it allegedly sent on Plaintiff's behalf. (*Id.* ¶ 29.) Defendant refused to provide the letters, asserting that they were proprietary. (*Id.*) Similarly, on November 1, 2023, Plaintiff requested Defendant provide copies of any contractual agreement that authorized the $100 recurring payment. (*Id.* ¶ 30.) The next day, Defendant emailed Plaintiff, stating:

> Regarding the monthly invoices, per Minnesota law we do have to send a contract for you to sign before each monthly invoice. I apologize, due to lack of communication on our part it looks like we didn't get that sent . . . . We will still need to get the contract signed in order to continue services moving forward.

(*Id.* ¶ 31.) Plaintiff did not execute that agreement, and on November 3 alerted Defendant that he no longer needed its services. (*Id.* ¶¶ 32–33.) That same day, however, Defendant attempted to charge Plaintiff the $100 monthly fee. (*Id.* ¶ 33.) This occurred approximately five more times between November 7 and 21, 2023. (*Id.* ¶ 34.)

Plaintiff then brought this lawsuit, asserting that each of Defendant's successful and

---

[1] The charge for $19.99 may be from the recommended "third party site" that Plaintiff agreed to use under the Credit Monitoring Agreement. (*See* Doc. 28-3 at 1.) Though, given that Plaintiff alleges additional or other charges and attempted charges, the truthfulness of this statement is immaterial to state a claim for relief. *See* 15 U.S.C. § 1679b.

attempted charges for services and the parties' Agreements violate the CROA and MNCSOA. (*Id.* ¶¶ 36–37, 41–51, 83–123.)

### B. Procedural Background

Plaintiff originally filed this action in the United States District Court for the District of Minnesota (Doc. 1). Defendant filed a Motion to Transfer Venue (Doc. 35) to the District of Arizona, which Judge Blackwell granted (*see* Doc. 56). In his Order, Judge Blackwell first found that the Contract's forum-selection clause did not violate the CROA anti-waiver provision, and therefore did not impermissibly waive Plaintiff's right to sue, because the Act guarantees the right to enforce claims but does not guarantee a right to a specific forum for litigation. (*Id.* at 4 (citing *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 99–103 (2012) (holding that an arbitration provision did not violate the consumers right to sue under the CROA)).) Judge Blackwell then held that a "forum-selection clause cannot be rendered *prima facie* invalid by assertions that an entire contract is void." (*Id.* at 5 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)).) Consequently, that court transferred the case to the District of Arizona, as designated in the contract's forum-selection clause. (*See id.* at 5–6; Doc. Doc. 28-1 at 6.)

Defendant then filed the instant Motion, which the Court now considers.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory

or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### III. DISCUSSION

In Counts I and II, Plaintiff claims that Defendant violated the CROA and MNCSOA, in part, by attempting to have Plaintiff waive certain rights afforded to him under the acts. Specifically, Plaintiff contends that the forum-selection clause, the choice-of-law clause, the limitation of damages clause, and the attorneys' fees clause each constitute an impermissible attempt to obtain waiver and therefore violate Plaintiff's rights under the statutes. It therefore follows that much of the requisite discussion for this Motion centers around rights enumerated under the CROA and MNCSOA. Previously, courts have

recognized "four rights" under the CROA:

> (1) The right to dispute inaccurate information in a credit report by contacting the credit bureau directly; (2) The right to obtain a copy of the consumer's credit report from a credit bureau; (3) The right to sue a credit repair organization that violates the CROA; and (4) The right to cancel a contract with any credit repair organization for any reason within 3 business days from the date signed. 15 U.S.C. § 1679c.

*In re Barnes*, 397 B.R. 149, 155 (Bankr. N.D. Al. 2008). Though, as this Court will discuss, the United States Supreme Court has contoured the "rights" afforded under the CROA such that the "right to sue" does not necessarily give a plaintiff a right to sue in a specific judicial forum. *CompuCredit*, 565 U.S. at 100.

### A. Forum-Selection Clause[2]

Defendant argues that the anti-wavier provisions of the CROA and MNCSOA do not guaranty a right to sue in the consumer's chosen judicial forum, and thus, a forum-selection clause could not violate either statute. (Doc. 63 at 5–6.) In response, Plaintiff attempts to distinguish the authority Defendant relies on, but does not otherwise refute Defendant's argument. (*See* Doc. 67 at 9–11.)

This issue falls decisively in favor of Defendant, as the United States Supreme Court has spoken clearly on this matter. The Court explained that the CROA does not give consumers the right to bring an action in a court of law, rather "it imposes an obligation on credit repair organizations to supply consumers with a specific statement." *CompuCredit* 565 U.S. at 100. As the Court further explained, the "right to sue" language is a "colloquial method of communicating to consumers that they have the legal right, enforceable in court, to recover damages from credit repair organizations that violate the CROA." *Id.* at 103. In sum, the right fixed upon the consumer under the CROA is that of disclosure, not the ability to sue in a forum of their choice. *See id.* at 102 ("We think it clear, however, that this mere "contemplation" of suit in any competent court does not guarantee suit in all

---

[2] As Defendant notes, there is limited case law discussing Minnesota Statute § 332.53, but the MNCSOA and the CROA anti-waiver provisions offer the same protections, and therefore the Court finds decisions interpreting CROA are persuasive. *See State v. Stickney*, 5 N.W.2d 351, 352–53 (Minn. 1942) ("Where the state statute is the same or substantially the same as the federal act from which it was copied, the prior construction of the federal statute should be deemed controlling.").

1  competent courts, disabling the parties from adopting a reasonable forum-selection
2  clause.").

3  Plaintiff contends that *CompuCredit* is distinguishable because it dealt with the
4  Federal Arbitration Act, and not with forum-selection clauses. (Doc. 67 at 10–11.) This
5  argument misses the mark. Though the Court spoke on a question concerning arbitration
6  and the CROA, the majority interpreted that statute's plain meaning without cabining its
7  analysis to applications involving arbitration clauses. *See CompuCredit*, 565 U.S.
8  at 100–103. Moreover, when the Court analyzed the CROA's disclosure requirements,
9  which is where Congress placed the "right to sue" language, it found that the statute lacked
10 congressional command that the FAA should not apply. *See id.* Then, the Court stated
11 that the CROA, by its plain terms, does not provide a "right to sue" in any tribunal or
12 arbitral forum, it simply gives the *consumer* the right to know they may seek redress for
13 alleged violations. *See id.*; *see also Tiller v. McGlynn Mktg., LLC*, No. 15-cv-613
14 (RHK/TNL), 2015 WL 13759852, at *4 (D. Minn. May. 1, 2015) ("One of the required
15 disclosures is that the consumer has 'a right to sue a credit repair organization that violates
16 the [CROA].'"). Contrary to Plaintiff's argument, the Supreme Court's holding in
17 *CompuCredit* is not displaced simply because this case involves a forum-selection clause
18 rather than an arbitration agreement. And upon review, this Court, like others, easily
19 concludes that 15 U.S.C. § 1679c does not house a congressional command that
20 forum-selection clauses should not apply. *Cf. CompuCredit*, 565 U.S. at 100–103.

21 At bottom, Defendant is correct, a forum-selection clause does not violate Plaintiff's
22 rights under the CROA of the MNCSOA. *See CompuCredit*, 565 U.S. at 100–103. The
23 Court will grant Defendant's Motion and dismiss counts I and II to the extent that Plaintiff
24 asserts that the forum-selection clause violates the CROA or the MNCSOA.

25 **B. Choice-of-Law Clause**

26 The Contract states that "[a]ll matters relating to this Agreement, any dispute or
27 claim arising therefrom . . . including non-contractual disputes or claims . . . shall be
28 covered [by] . . . the laws of the State of Arizona." (Doc. 21-1 at 6.) Defendant argues that

this choice-of-law clause does not violate the CROA or the MNCSOA because it does not waive any right Plaintiff has under the statutory schemes. (Doc. 63 at 7–8.) In response, Plaintiff maintains that the clause is an impermissible waiver of his rights to assert a claim under the MNCSOA because it prevents him from bringing claims and seeking remedies under the laws of the state of Minnesota. (Doc. 67 at 11.)

Plaintiff does not rebut that the choice-of-law clause does not violate the CROA. (*See generally* Doc. 67.) Therefore, the Court will deem that argument conceded. *See Hopkins v. BMO Bank NA*, 750 F. Supp. 3d 1041, 1045 (D. Ariz. 2024) (finding that failure to substantively respond to an argument results in concession); *see also Indep. Towers of Wash. v. Washington*, 350. F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot 'manufacture arguments for [a party].'"). Even if Plaintiff contested this point, however, Defendant has provided ample authority to suggest that a choice-of-law clause would not violate the CROA. *See, e.g.*, *Gay v. CreditInform*, 511 F.3d 369, 390–92 (3d Cir. 2007) (enforcing a Virginia choice-of-law provision insofar as it applied to an arbitration agreement in a CROA contract); *King v. Capital One Bank (USA)*, No. 3:11-CV-00068, 2012 WL 5570624, at *11 (W.D. Va. Nov. 15, 2012) (applying a Florida choice-of-law provision to determine that the defendant could enforce arbitration and class action waiver provisions); *Rex v. CSA-Credit Sols. of Am., Inc.*, 507 F. Supp. 2d 788, 793 (W.D. Mich. 2007) (applying Texas law under a choice-of-law provision).

Much like its federal counterpart, the MNCSOA provides that "[a]ny attempt by a credit services organization to have a buyer waive [certain] rights" is a violation of the statute. Minn. Stat. § 332.53. Likewise, the MNCSOA requires organizations to provide consumers with a disclosure statement that maintains "[the consumer has] a right to sue a credit repair ORGANIZATION that violates the Credit Repair Organization Act." Minn. Stat. § 332.57; 15 U.S.C. § 1679c(a). Conspicuously absent from those subsections are provisions designating a choice-of-law clause a violation of the act. *See* Minn. Stat. §§ 332.52 to 332.60; 15 U.S.C. §§ 1679 to 1697j.

- 7 -

Unfortunately, there is no case law interpreting the impact of a choice-of-law clause on consumer rights under the MNCSOA. Though Minnesota courts "typically refuse to apply choice of law provisions to consumer protection claims when application of the choice of law clause will limit or deprive the consumer of a remedy provided by his or her home state." *Khoday v. Symantec Corp.*, No. CIV. 11-180 (JRT/TNL), 2014 WL 1281600, at *20 (D. Minn. Mar. 13, 2014). Though that point of policy still does not support the notion that a choice-of-law clause violates the MNCSOA. *See id.*

The case that *Khoday* relies on provides a slightly different approach to choice-of-law clauses. *See id.* (citing *Millett v. Truelink, Inc.*, No. CIV.05-599 SLR, 2006 WL 2583100, at *4 (D. Del. Sept. 7, 2006)). In *Millet*, the court refused to enforce a Delaware choice-of-law clause that violated Kansas' public policy because the clause insulated the defendant "from liability against all statutory consumer fraud claims" for conduct that occurred outside of Delaware. *Millett*, 2006 WL 2583100, at *4 (citing Kan. Stat. Ann. § 50-625 ("a consumer may not waive or agree to forego rights or benefits under the [Kansas Consumer Protection Act]"); *Stone St. Servs., Inc. v. Daniels*, No. CIV.A. 00-1904, 2000 WL 1909373, at *4–5 (E.D. Pa. 2000) (discussing the non-waiver provision of the KCPA)). The Kansas statute in that case set forth a firm policy of preventing consumers from waiving certain consumer protection rights. *See Millet*, 2006 WL 2583100, at *4; Kan. Stat. Ann. § 50-625. This Court could not locate a comparable Minnesota statute. Moreover, the *Millet* court was not presented with whether a choice-of-law clause was a violation of the claims before it, which included a CROA claim and several state law consumer protection claims. *Id.*

Truly, the difficultly in discerning the effect of a choice-of-law clause vis-à-vis the MNCSOA's anti-waiver provision is that the clause may well divest the consumer of the right to enjoy the protections of his state's law. At first blush, this may seem to upend the logical purpose of the consumer protection laws.[3] However, the plain language of the

---

[3] Arizona provides a near identical statutory scheme under which consumers like Plaintiff could seek redress. Although this is not material to the analysis because the question is whether a choice-of-law clause violates the MNCSOA, not whether the chosen state's law would otherwise provide a substantively similar counterpart to remedy an injury.

- 8 -

MNCSOA simply does not support finding a "right" to a certain state's law, and therefore this Court cannot find that a choice-of-law provision violates any of the MNCSOA anti-waiver provisions.[4]  *See* A. Scalia and B. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012) ("[A] matter not covered is to be treated as not covered.").

Therefore, the Court will grant Defendant's Motion and dismiss Count I and II to the extent that Plaintiff asserts the choice-of-law clause violated the statutes.

### C. Limitation of Damages Clause

Two clauses in the initial services agreement purport to limit the total liability and types of damages in any suit. (*See* Doc. 28-1 at 5.) Section 7.1 states:

> [T]o the fullest extent permitted by law, [Defendant's] total liability to [Plaintiff] for any and all injuries, claims, losses, expenses, or damages whatsoever arising out of or in any way related to this Agreement from any cause or causes of action, including but not limited to [Defendant's] negligence, errors, omissions, strict liability, breach of contract, or breach of warranty shall not exceed the amounts paid by the [Plaintiff] to the [Defendant].

(*Id.*) Similarly, Section 7.2 provides "[t]o the fullest extent permitted by law, in no event will [Defendant] be liable to [Plaintiff], or to any third party, for any indirect, consequential, incidental, special, punitive or exemplary damages of any nature. (*Id.*)

Defendant argues that the Contract language limiting certain damages "to the fullest extent permitted by law" is not a violation of the CROA and MNCSOA anti-waiver provision because that language would not waive or limit damages under either statute. (Doc. 63 at 8–9.) In response, Plaintiff contends that the statutory language regarding "[a]ny attempt by a person" to obtain waiver constitutes a violation to support finding that the Contract language violated those provisions. (Doc. 67 at 13.)

Under the Contract the parties "agree[] that, to the fullest extent permitted by law, [Defendant's] total liability to [Plaintiff] for any and all injuries, claims, losses, expenses,

---

[4] And though *CompuCredit* cannot simply be grafted onto every situation in which an agreement compels parties to use a certain forum or law, its interpretation of the CROA's plain text is somewhat instructive here. *See CompuCredit*, 565 U.S. at 100–103. That is, the CROA and MNCSOA provide very defined "rights," and the right to litigate in certain forum or the right to a certain state's law is absent in both statutes. Thus, the inclusion of a choice-of-law clause cannot violate either the CROA or MNCSOA. *Cf. id.*

or damages . . . shall not exceed the amounts paid by the [Plaintiff] to the [Defendant]." (Doc. 28-1 at 5.) The CROA and MNCSOA preclude the limitation of certain damages. *See* 15 U.S.C. § 1679g (providing for actual and punitive damages); Minn. Stat. § 332.60 (same). Both schemes provide that "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under this subchapter shall be treated as a violation of this subchapter." 15 U.S.C. § 1679f(b); Minn. Stat. §§ 332.53.

While Plaintiff correctly notes that his interpretation of the Contract "need only be plausible to withstand a Rule 12(b)(6) motion," it is not plausible. In fact, Plaintiff does little to contend with the clause's limiting language, and instead merely contends that the CROA and MNCSOA labels "[a]ny attempt" as a per se violation. (*See* Doc. 67 at 13–14.); *see also* 15 U.S.C. § 1679f; Minn. Stat., § 332.53   Putting Plaintiff's strained reading aside, the contractual language could not be more unambiguous: damages are limited unless the law prevents the limitation, in which case the clause does not apply. *See Grosvenor Holdings, L.C. v. Figueroa*, 218 P.3d 588, 594 (Ariz. Ct. App. 2009) ("Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto."); *Michaels Stores, Inc. v. Sun Life. Assurance Co. of Can.*, 413 F. Supp. 3d 854, 857–58 (D. Minn. 2019) ("If the court determines that the contract language is unambiguous—meaning it has only one reasonable interpretation—it will give effect to that language and determine the parties' intent "from the language of the written contract alone." (cleaned up)). Therefore, the Contract does not make any attempt at waiver because the limitation of damages clause specifically exempts its application to laws that prohibit restrictions on limiting damages. (*See* Doc. 28-1 at 5.)

Therefore, Court will grant Defendant's Motion and dismiss Count I and II to the extent that Plaintiff asserts the statutes were violated by the limitation of damages clause.

### D. Attorneys' Fees Clause

Defendant argues that the attorneys' fees clause does not violate the CSOA or the

MNCSOA because the clause only limits fees relating to claims "'arising out of or relating to the Agreement' (i.e., breach of contract and related claims)." (Doc. 63 at 9–10 (quoting Doc. 28-1 at 6–7).) Defendant further explains that Arizona Revised Statute § 12-341.01(A) informs the clause because it provides that the "prevailing party '[in a] contested action arising out of a contract'" may recover fees. (*Id.*)

In response, Plaintiff argues that similar clauses have been interpreted to encompass "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." (Doc. 67 at 15 (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)).) Additionally, Plaintiff points out that nothing in the clause limits its application to § 12-341.01(A). (*Id.*)

Plaintiff's interpretation of the contract need only be plausible to withstand a Rule 12(b)(6) motion. *See Sisly v. Sprint Commc'ns Co., L.P.*, 284 Fed. App'x 463, 467 (9th Cir. 2008). The attorneys' fees clause provides:

> In the event that any action, suit, or other legal or dispute resulting proceeding is instituted or commenced by either Party hereto against the other Party arising out of or related to this Agreement, the prevailing Party shall not be entitled to recover its reasonable attorneys' fees and costs from the non-prevailing party.

(Doc. 21-1 at 6–7.) As noted, Plaintiff interprets the attorneys' fees clause as an attempt to illegally limit fees recoverable under the CROA and MNCSOA. (Doc. 67 at 15.) This interpretation is plausible. The Contract restricts fees in "any action . . . arising out of or *related* to this Agreement." (Doc. 21-1 at 6–7); *cf. Simula, Inc v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (finding an arbitration clause's language that "[a]ll disputes arising in connection with this Agreement" embraced "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract"); *see also J.J. Ryans & Sons, Inc. v. Rhone Poulenc Textile*, 863 F.2d 315 (4th Cir. 1988) (finding a similar clause to embrace "every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute"). Put another way, the clause limits the available attorneys' fees from actions arising under the CROA and MNCSOA, as claims under those statutes would each have significant

relationships to and originate from the contract. *See Simula, Inc.*, 175 F.3d at 721.[5]

Therefore, the Court will deny Defendant's Motion as to Count I and II to the extent that it seeks to dismiss those claims predicated on violations by the Contract's attorneys' fees clause.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting in part** Defendant's Motion to Dismiss Counts I and II in part without prejudice (Doc. 63).

Dated this 14th day of May, 2025.

Honorable Susan M. Brnovich
United States District Judge

---

[5] Defendant also asserts that the Contract's severability clause precludes finding that the attorneys' fees clause and the limitation of liability clause violate either statute. (Doc. 68 at 6.) That clause states that if any term of the Contract is found "invalid, illegal, or unenforceable" then it "shall not affect any other term of provision of this Agreement." (Doc. 28-1 at 5.) According to Defendant's, that clause "renders any term ineffective to the extent that it is illegal." (Doc. 68 at 6.) Perhaps better said, however, is that the clause prevents illegal Contractual terms from impacting other contractual terms. The clause does not render illegal terms so "ineffective" to avoid violations of the statutes at issue.

- 12 -